# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ROLANDO COCA ALVAREZ,
    Petitioner,

v.                                                   Case No. 8:13-cv-766-T-24-AEP
                                                   Case No. 8:10-cr-512-T-24-AEP

UNITED STATES OF AMERICA,
    Respondent.
_____/

## ORDER

This cause comes before the Court on Petitioner Rolando Coca Alvarez's Motion under 28 U.S.C. § 2255. (Cr. Dkt. 69, Civ. Dkt. 1.) The Government filed a response in opposition. (Civ. Dkt. 9.) The Petitioner was given an opportunity to reply but failed to file a reply.

## I. BACKGROUND

On March 6, 2010, Petitioner Rolando Coca Alvarez and other persons entered the iGov Technologies warehouse in Tampa, Florida, disarmed the alarm system, and removed approximately 3,000 computers, scanners, and other electronic equipment, all belonging to the United States Military.

On December 8, 2010, Petitioner was charged with one count of theft of Government property in violation of 18 U.S.C. § 641. (Cr. Dkt. 1.) On February 28, 2011, Daniel Hernandez filed a notice of appearance as Petitioner's counsel. (Cr. Dkt. 14.) Three months later, Mr. Hernandez withdrew as Petitioner's counsel, and Assistant Federal Public Defender Jenny Devine was appointed as counsel. (Cr. Dkts. 30-35.)

On August 22, 2011, Petitioner pled guilty without a plea agreement to one count of theft of Government property in violation of 18 U.S.C. § 641. (Cr. Dkts. 1, 62.) The Presentence

Investigation Report ("PSR") held Petitioner accountable for a total loss amount of $7,406,901.46, resulting in a 20-level increase under § 2B1.1(b)(1)(K) of the United States Sentencing Guidelines ("USSG"). Petitioner's total offense level was 23, with a criminal history category of I, USSG range of 46 to 57 months of imprisonment.

Both the Government and Petitioner filed objections to the PSR (the Government for failure to include a four-level role increase and Petitioner as to the loss amount and restitution amount) but, at sentencing, withdrew their objections. (Cr. Dkt. 60.) The Court adopted, without objection, the facts and the guideline recommendations in the PSR. (Cr. Dkt. 60.) The Court sentenced Petitioner to 57 months of imprisonment. (Cr. Dkts. 52, 60.)

Petitioner appealed his sentence, arguing that it was procedurally and substantively unreasonable because the Court did not adequately explain its decision, the Court credited a detective's unsworn testimony, and the sentence was greater than necessary. (Cr. Dkt. 56.) On June 19, 2012, the Eleventh Circuit affirmed Petitioner conviction and sentence. (Cr. Dkts. 67, 68); *United States v. Alvarez*, 472 Fed. App'x 880 (11th Cir. 2012).

On March 25, 2013, Petitioner filed a timely 28 U.S.C. § 2255 motion, setting forth the following four grounds of relief based on ineffective assistance of counsel: (1) statements from Mr. Hernandez prejudiced the Court and Ms. Devine; (2) Ms. Devine failed to object to the total loss amount; (3) Ms. Devine failed to ask the Court to clarify its finding that Petitioner was not truthful at the sentencing; and (4) Ms. Devine failed to argue for a downward departure based on Petitioner's cooperation with the Government.

## II.   STANDARD

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a

defendant must demonstrate that his attorney's performance was deficient, which requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Id.* Second, a defendant must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.* "There is no reason for a court deciding an ineffective-assistance-of-counsel claim to approach the inquiry in the same order, or even to address both components of the inquiry, if the prisoner makes an insufficient showing on one." *Lockwood v. Hooks*, 415 F. App'x 955, 956 (11th Cir. 2011) (citations omitted).

Under the performance component of the *Strickland* inquiry, a movant "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. The reasonableness of an attorney's performance is evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The movant carries a heavy burden, as there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

Simply showing that counsel erred is insufficient; the defects in counsel's performance must be prejudicial to the defense. *Id.* at 691-92. Under the prejudice component of *Strickland*, a movant must show that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### III. PETITIONER'S § 2255 MOTION

#### A. <u>Ground One: Former counsel's statements prejudiced new counsel</u>

In ground one, Petitioner contends that Ms. Devine and the Court were prejudiced by Mr.

3

Hernandez's statement that he had irreconcilable differences stemming from Petitioner's lack of cooperation with the Government. (Civ. Dkt. 1 at 4.)

On May 31, 2011, Mr. Hernandez moved to withdraw as Petitioner's counsel, because: (1) Petitioner was "unwilling to complete the conditions of employment after several reminders;" (2) Petitioner and Mr. Hernandez had "developed differences of opinion regarding several aspects of [Petitioner]'s case which does not allow the [Petitioner] and [Mr. Herndandez] to have the necessary rapport for working together;" (3) when they met to discuss discovery, pleading, proceeding to trial, and the sentencing guidelines, Petitioner was "acting angry and disrespectful" and told Mr. Hernandez that he was "doing absolutely nothing for" Petitioner; and (4) Mr. Hernandez had "recent unpleasant contacts with [Petitioner] and his family." (Cr. Dkt. 30.)

On June 3, 2011, the Court held a hearing on Mr. Hernandez's motion to withdraw. (Cr. Dkt. 32.) After hearing from Mr. Hernandez and Petitioner, the Court granted the motion. (Cr. Dkt. 33.)

In his § 2255 motion, Petitioner contends that Mr. Hernandez presumed Petitioner refused to participate with the Government despite knowing all the co-conspirators, and that Mr. Hernandez passed on his presumption by making "biased statements" prejudicing the Court and Ms. Devine. However, there is no evidence that Mr. Hernandez made statements regarding Petitioner's refusal to cooperate with the Government. In his affidavit, Mr. Hernandez states that he "never said or intimated that [he] was asking to withdraw because [Petitioner] was not cooperating with the government." (Civ. Dkt. 9, Ex. 1.)

Nor is there evidence that Mr. Hernandez prejudiced Ms. Devine or the Court. Ms. Devine's affidavit states that she was not prejudiced or influenced by any statements made by Mr. Hernandez. (Civ. Dkt. 9, Ex. 2.) Petitioner contends that the Court must have been

4

prejudiced by Mr. Hernandez's statements because the Court stated at the sentencing hearing that the Court remembered Mr. Hernandez formerly represented Petitioner. However, the sentencing hearing transcript shows that the Court never stated that it remembered Mr. Hernandez formerly representing Petitioner. The only discussion regarding previous counsel was the following:

> MR. MUENCH: Yes, Judge. Uh, as I'm sure you noticed in looking at the Presentence Report, this was an extremely, uh, professional burglary. This is not a typical burglary.
>
> THE COURT: Yes, I had a hearing on this, and I can't remember the context, maybe a bond hearing.
>
> MR. MUENCH: Yes.
>
> THE COURT: What was it?
>
> MS. DEVINE: It was a motion to withdraw by his last counsel.
>
> THE COURT: Oh, okay.
>
> MR. MUENCH: No, it was before that. It was a bond hearing. She wasn't here –
>
> MS. DEVINE: Oh.

(Dkt. 60 at 10:13-25.) Petitioner's allegation that Mr. Hernandez must have made statements that prejudiced the Court and Ms. Devine is purely speculative. Therefore, Petitioner's claim in Ground One is without merit.

### B. Ground Two: Failure to object to the total loss amount

In ground two, Petitioner contends Ms. Devine rendered ineffective assistance by failing to object to the total loss amount of $7,406,901.46 at the sentencing and by not raising this issue on appeal.

Under § 2B1.1(b)(1)(K), a loss amount exceeding $7,000,000 results in a 20-level enhancement. The PSR determined that Petitioner was accountable for a total loss amount of $7,406,901.46, resulting in a 20-level increase under § 2B1.1(b)(1)(K). At sentencing, Petitioner withdrew his objection to the loss amount contained in the PSR in return for the Government

withdrawing their objection to the PSR's failure to include a four-level role increase. According to Ms. Devine's affidavit:

> The Government agreed to withdraw their role objection for a 4-level increase in return for the defense withdrawing their loss amount objection for a 2-level decrease. At that time, I believed the Government had a better chance at winning their role objection than we had at winning the loss amount objection. It was my professional opinion that this compromise helped [Petitioner] avoid an even higher advisory guideline range than what he currently faced.

(Civ. Dkt. 9, Ex. 2 ¶ 4.)

In his § 2255 motion, Petitioner contends that the total amount should not have included the cost of extended warranties on top of the manufacturer's standard warranties. Petitioner contends that, without the inclusion of the extended warranties, the total loss amount would be less than $7 million (but more than $2 million), which would have reduced his offense level and warranted a lower guideline range. Petitioner argues that Ms. Devine should have objected to the inclusion of extended warranties in the total loss amount at sentencing and on appeal.

Petitioner's argument lacks merit not only because he failed to demonstrate that the cost of the extended warranties should not have been included in the loss amount but also because Ms. Devine's strategy was objectively reasonable. Ms. Devine believed that the Government was more likely to succeed on its role objection which would have resulted in a four-level increase, than Petitioner was on his loss objection which would have resulted in a two-level decrease. Petitioner agreed to withdraw his objection to the loss amount in exchange for the Government not seeking an increase for his role as an organizer. Under the circumstances, Ms. Devine's withdrawal of the loss amount objection "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Ms. Devine's performance with regards to the loss calculation, evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, was well within the "wide range of reasonable professional assistance." *Id.* at

6

689. Further, for the same reason that Ms. Devine was reasonable for not objecting to the loss amount at the sentencing, it was reasonable for her not to appeal it. Petitioner's ineffectiveness claim in Ground Two is therefore without merit.

### C. Ground Three: Failure to request clarification of Court's statement

In ground three, Petitioner contends Ms. Devine rendered ineffective assistance by failing to "request clarification" as to why the Court stated that Petitioner was not being truthful.

At the sentencing, Petitioner addressed the Court. (Cr. Dkt. 60 at 28-33.) Petitioner denied that he came from Miami to Tampa to commit the theft. Petitioner first asserted that his residence was in Tampa, but after further questioning by the Court, Petitioner stated that he went to Miami three days a week and got a hotel room. Further, Petitioner denied that he was inside the iGov Technologies warehouse but only stood outside serving as a lookout while theft was occurring. He stated that his DNA was found inside the iGov Technologies warehouse because he had gone to scope out the facility on the day before the theft, when it was open to the public.

However, Hillsborough County Sheriff's Detective David Thatcher testified that law enforcement agents infrequently observed Petitioner in Tampa (and it would be only on the weekends), whereas they routinely observed him in Miami. (Cr. Dkt. 60 at 41.) Further, although security cameras showed that Petitioner walked through the front door of the iGov Technologies warehouse on the day before the theft, law enforcement agents found his DNA on a different door—the one that was propped open during the theft—which was not accessible to the public. (Cr. Dkt. 60 at 35-36.)

In explaining why the Court was sentencing Petitioner to 57 months in prison, the top of the guidelines range, the Court stated:

> I didn't think you were truthful with me this morning. You downplayed, number one, the fact that--first of all, you told me you lived in Tampa, and then you told

7

me, oh, no, you went to Miami three days a week. And now I hear that you were very seldom in Tampa. So I didn't think you were truthful in that regard to me this morning.

Also there was the DNA checking out the front door because you went in there the day before. And that wasn't even where the DNA was found. So none of that encourages me as far as your truthfulness is concerned and your acceptance of responsibility in this matter.

(Cr. Dkt. 60 at 44-45.)

In his § 2255 motion, Petitioner contends Ms. Devine was ineffective for failing to ask the Court to clarify why the Court believed Petitioner was untruthful. However, the Court explained why it believed Petitioner was being untruthful and asking for further explanation would not have benefitted Petitioner. Under the circumstances, Ms. Devine acted responsibly in deciding against seeking further clarification. Petitioner's ineffectiveness claim in Ground Three is without merit.

### D. Ground Four: Failure to seek downward departure

In ground four, Petitioner contends Ms. Devine rendered ineffective assistance by failing to seek a downward departure for his cooperation with the Government through a § 5K1.1 motion or a motion under the Federal Rules of Criminal Procedure 35(b).

Section 5K1.1 of the USSG gives the Government "a power, not a duty, to file a motion when a defendant has substantially assisted." *United States v. Forney*, 9 F.3d 1492, 1500 (11th Cir. 1993). The same holds true for a Rule 35(b) motion. Where the Government did not file a motion for downward departure, Ms. Devine was not ineffective for failing to argue for a downward departure under § 5k1.1. Nor could Ms. Devine have filed a § 5k1.1 motion, since only the Government can file such a motion. Further, the Court normally does not depart downward for cooperation when the Government does not file a motion seeking it. (Cr. Dkt. 60 at 31.) Petitioner's ineffectiveness claim in Ground Four lacks merit.

8

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Petitioner Rolando Coca Alvarez's Motion under 28 U.S.C. § 2255 (Cr. Dkt. 69, Cv. Dkt. 1) is **DENIED**. The Clerk is directed to enter judgment for the United States and to close the civil case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Tampa, Florida, this 10th day of October, 2013.

*[signature: Susan C. Bucklew]*
SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record and Pro Se Petitioner